**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JAY STEVEN HEIDE,**

**Plaintiff,**

**v.** **CASE NO. 24-3040-JWL**

**KANSAS DEPARTMENT OF CORRECTIONS, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

This is a pro se civil rights action under 42 U.S.C. § 1983 brought by Plaintiff and state prisoner Jay Steven Heide. It comes before the Court on Plaintiff's third amended complaint (Doc. 21); his motion to appoint counsel, for discovery, and for preliminary injunction (Doc. 22), and supplement thereto (Doc. 25); his notice to the Court (Doc. 26); his motion to amend the third amended complaint (Doc. 27); and his supplemental filings (Doc. 28, 29, and 30). For the reasons explained below, the Court will deny the pending motions and dismiss this matter without prejudice.

**I. Filing Fee**

On March 18, 2024, Plaintiff filed his initial complaint in this matter but he neither paid the filing fee nor moved for leave to proceed in forma pauperis (IFP).[1] Thus, the following day, the Court issued a Notice of Deficiency (NOD), directing Plaintiff to either pay the fee or file a motion for leave to proceed IFP. (Doc. 3.) The NOD advised Plaintiff that if he failed to do so within 30 days of the date of the NOD, "this action may be dismissed without further notice for failure to comply with this court order." *Id.* at 1.

[1] When the Court grants leave to proceed in forma pauperis, it means that the plaintiff may proceed without being required to first pay the statutory filing fee in full.

On March 24, 2024, Plaintiff filed a motion for leave to proceed IFP. (Doc. 5.) Although he did not submit the inmate account statement required to support his motion, he advised that he had requested it from the KDOC but not yet received it. (Docs. 5 and 5-1.) On March 25, 2024, the Court issued a Memorandum and Order (M&O)[2] reminding Plaintiff that he had until April 18, 2024 to submit his account statement or file a motion with the Court to extend that deadline. (Doc. 7, p. 2, 4.) The following day, Plaintiff submitted a second motion for leave to proceed IFP, again telling the Court that he had requested but not yet received the required inmate account statement (Doc. 9), and a motion for extension of time to produce the account statement (Doc. 10). On April 2, 2024, the Court granted the motion for extension of time, granting Plaintiff until and including May 9, 2024 to submit the account statement. (Doc. 11.) Nevertheless, on April 3, 2024, Plaintiff submitted a second motion for extension of time to submit the account statement. (Doc. 13.) In an order issued on April 4, 2024, the Court denied the second motion for extension of time as moot because the April 2 order had granted the extension. (Doc. 17.)

The Court received the account statement from Plaintiff on April 15, 2024. (Doc. 23.) On April 16, 2024, the Court granted the pending motions to proceed IFP and stated, in part:

> The Court assesses an initial partial filing fee of $11.00, calculated under 28 U.S.C. § 1915(b)(1). Plaintiff is granted to and including April 30, 2024, to submit the fee. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fee as directed may result in the dismissal of this matter without further notice.

(Doc. 24.)

The deadline for Plaintiff to either submit the initial partial filing fee of $11.00 or object to the April 16 order has now passed and Plaintiff has done neither, nor has he moved for an extension of time in which to pay. Under Rule 41(b) of the Federal Rules of Civil Procedure, a district court

[2] Because of the numerous orders issued by this Court in this case, orders will be referred to by date. For example, the Memorandum and Order issued on March 25, 2024 (Doc. 7) will be referred to hereinafter as "the March 25 M&O."

may dismiss an action "if the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b); *See also Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (noting that Rule 41(b) "has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure . . . to comply with the . . . court's orders"). Because Plaintiff has failed to pay the initial partial filing fee as ordered, the Court concludes that this matter could be dismissed without prejudice under Rule 41(b). In addition, however, this matter is subject to dismissal for failure to state a plausible claim on which relief can be granted. Thus, even had Plaintiff timely paid the initial partial filing fee, the Court still would dismiss this matter, as explained below.

**II. Background**

As noted above, this case began on March 18, 2024, when Plaintiff filed his complaint. (Doc. 1.) As the Court has previously explained to Plaintiff, "[b]ecause Plaintiff is a prisoner, the Court is required by statute to screen his [complaint] and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief." (Doc. 4, p. 1 (citing 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B)).) The Court attempted to screen the complaint, but found it "nearly impossible to decipher" because Plaintiff wrote on the required court-approved form "without regard to the information it requests and at times appearing merely to list words and phrases." (*See* Doc. 4, p. 2-3.)

Thus, on March 20, 2024, the Court issued an M&O explaining to Plaintiff that even though he is pro se, he must follow Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to "contain . . . a short and plain statement of the claim showing that [the plaintiff] is entitled to relief" so that the defendants to the case have "fair notice of the basis of the claim against them" and so that the Court is able to determine whether Plaintiff has stated a plausible

claim for relief. (Doc. 4, p. 3.) The March 20 M&O informed Plaintiff that the failure to follow Rule 8 can lead to the complaint being dismissed and it directed Plaintiff to submit a complete amended complaint that satisfies Rule 8. *Id.* at 3-4. The March 20 M&O warned Plaintiff that if he failed to file an amended complaint that satisfies Rule 8 by April 22, 2024, "this matter may be dismissed without further notice to Plaintiff." *Id.* at 6.

Four days later, on March 24, 2024, Plaintiff filed documents that identified additional defendants and asserted additional claims; the Court liberally construed the documents as a motion to supplement the complaint. (Doc. 6.) On March 25, 2024, the Court issued an M&O that explained to Plaintiff—as did the March 20 M&O—that since "the initial complaint is subject to dismissal in its entirety because it fails to comply with Rule 8," Plaintiff must file a complete amended complaint. (Doc. 7, p. 2.) In other words, the amended complaint required by the March 20 M&O must independently state all of the claims and defendants in this matter, without the need for supplementation. Thus, the March 25 M&O denied the motion to supplement, pointing out that "there is no need to supplement the original complaint since the amended complaint will identify all defendants and claims Plaintiff wishes to pursue." *Id.* at 3.

In light of the broad scope of defendants and claims identified in the motion to supplement the complaint, however, the March 25 M&O also reminded Plaintiff that he must comply with Federal Rules of Civil Procedure 18 and 20, which control how and when plaintiffs are allowed to join—or bring—multiple claims and multiple defendants in a single lawsuit. *Id.* at 3-5. The March 25 M&O warned Plaintiff that if his amended complaint "fails to comply with these rules, improperly joined parties may be dropped and improperly joined claims may be severed from this lawsuit." *Id.* at 4 (citations omitted).

On March 26, 2024, Plaintiff filed an amended complaint (Doc. 8) and the Court conducted the statutorily required screening. Although the amended complaint was much easier to comprehend than the original complaint, it nevertheless suffered flaws that left it subject to dismissal in its entirety. Thus, on April 2, 2024, the Court issued an M&O that pointed out that despite the March 25 M&O, the amended complaint did not comply with Rules 18 and 20. (Doc. 11, p. 5-7.) The April 2 M&O also "highlight[ed] other deficiencies in the [amended] complaint so that Plaintiff may avoid them when drafting his second amended complaint." *Id.* at 7.

More specifically, (1) the amended complaint left unclear who Plaintiff intended to name as Defendants; (2) the Kansas Department of Corrections (KDOC) and inmate Anthony Leon Bartley—both named as Defendants in the amended complaint—are not proper Defendants to a § 1983 claim; (3) the claims against Defendant Bartley and Defendant Curry, a correctional officer, appeared barred by the applicable 2-year statute of limitations; (4) the amended complaint failed to allege specific actions or inaction that showed the personal participation of every Defendant in the alleged constitutional violations, as is required to state a plausible claim for relief under § 1983; and (5) the amended complaint failed to allege facts that would support a claim that Defendant Centurion, a corporation, is liable under § 1983. *Id.* at 8-14. Due to these deficiencies, which the April 2 M&O thoroughly explained, the amended complaint was subject to dismissal. Instead of dismissing this matter, however, the Court granted Plaintiff "the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed" in the April 2 M&O. *Id.* at 14.

Plaintiff filed his second amended complaint on April 3, 2024. (Doc. 12.) A brief review of the second amended complaint revealed that it did not correct the problems identified in the April 2 M&O. Thus, the Court became concerned that Plaintiff was filing amended complaints

without first carefully reading the M&Os' explanations of the problems Plaintiff needed to correct. Accordingly, on April 4, 2024, the Court issued an order that stated, in relevant part:

> In an abundance of caution, the Court will allow a final opportunity for Plaintiff to file one additional amended complaint, which must be titled as the third amended complaint, and which must cure the deficiencies the Court has identified in the previous M&Os. The Court will direct the clerk to mail to Plaintiff the required court-approved form complaint and instructions for use in drafting this third amended complaint. In addition, the clerk has mailed a copy of the [April 2] M&O to Plaintiff at El Dorado Correctional Facility, where Plaintiff advises he is now incarcerated. If Plaintiff does not timely submit a third amended complaint, the Court will conduct the statutorily required screening of the current second amended complaint (Doc. 12) and issue further orders as necessary, including dismissal of parts or all of the second amended complaint as legally appropriate. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

(Doc. 17, p. 3.)

Plaintiff was granted to and including May 9, 2024 in which to submit his complete and proper third amended complaint. *Id.* at 4. Again, he was specifically instructed: "Plaintiff should carefully read each of the Court's previous orders in full and ensure that his third amended complaint conforms to the requirements set out therein." *Id.*

On April 15, 2024, Plaintiff filed a complaint titled as his second amended complaint, which this Court construes as the third amended complaint (Doc. 21), and multiple motions (Doc. 22). On April 23, 2024, Plaintiff filed documents that this Court has liberally construed as a supplement to the pending motions. (Doc. 25.) On April 29, 2024, Plaintiff filed a motion to amend his third amended complaint in order to add plaintiffs. (Doc. 27.) First, the Court will conduct the required screening of the third amended complaint as it was originally filed.

**III. The Third Amended Complaint (Doc. 21)**

The third amended complaint names as Defendants the Kansas Department of Corrections (KDOC); KDOC corrections officer Mr. Curry; the State of Kansas; Centurion, the medical provider for KDOC; and "Nursing Ms. Russell." (Doc. 21, p. 1-2.) As Count I, Plaintiff asserts

Defendant Curry committed assault and battery with intent to cause bodily harm and violated the Eighth Amendment to the United States Constitution by subjecting Plaintiff to excessive force or cruel and unusual punishment. *Id.* at 3. As the supporting facts for Count I, Plaintiff alleges that Defendant Curry injured him in July 2018 in Lansing, Kansas. *Id.* Plaintiff identifies several witnesses to the events and states that there may be video footage as well. *Id.* In the portion of the form for setting out Count II, Plaintiff continues his description of Count I. *Id.*

As Count III, Plaintiff alleges that the State of Kansas is engaging in federal extortion, racketeering, embezzlement, fraud, entrapment, involuntary servitude, and Eighth Amendment violations. *Id.* at 4. As supporting facts, Plaintiff states:

> The Governor to KS co-signs on [immoral] gambling adverti[s]ing on TV a bet on KC Ch[ie]fs game showing light to my Accusation on top of our never tax rebate price fixing on the illegal trade practices monop[o]lized single vendor in KS to by gouge prices on food, hygiene that are not price match to same exact product, size, quality, Brand to local Wal-mart Any wholesale vendor in KS. All tax payers residence.

*Id.* (all errors in original).

Plaintiff also attached pages to the third amended complaint in which he asserts that he does not always receive as much toilet paper as he is supposed to, in violation of his constitutional right to be free from cruel and unusual punishment. *Id.* at 6. Plaintiff further asserts that the toilet paper he does receive are small rolls of two-ply, which is insufficient since he suffers from a prolapsing rectum. *Id.* Plaintiff alleges that on April 12, 2024, he had to use his hand, boxers, or t-shirt instead of toilet paper, which led to the spread of fecal matter and put him at risk of a skin condition. *Id.* Plaintiff advises that he has an upcoming surgery related to the prolapse. *Id.* at 7.

The pages attached to the third amended complaint further assert that in 2023 and/or 2024, while at Norton Correctional Facility, Plaintiff contracted folliculitis, an inflammatory skin condition that results from fungus in his hair follicles and pores. *Id.* at 7. Plaintiff states that the

health services administrator has told him to stop putting in sick calls even though he has not yet found relief and is still itchy and cannot sleep. *Id.* Another page attached to the third amended complaint appears to pertain to part of a complaint directed to someone in the KDOC. *Id.* at 8. It alleges that Defendant Nurse Russell lied about Plaintiff, it protests that Plaintiff will not go to Winfield, it refers to a denied need for eye restoration, and it asserts that Norton Correctional Facility caused Plaintiff's folliculitis.

The final attached page appears to contain additional claims Plaintiff wishes to make in this case, identifying Count 1 as "Discrimination of my person by character." *Id.* It also alleges:

> Medical malpractice by Diagnosing me with [folliculitis] from a [dermatologist] Doctor McCarty consulted as well HAS Davis, Jones, Stewart were witness to assisting my care by not sending my pertinent records to El Dorado Facility as Doctor here and retaliating from Nurse Russell who works for Centurion violating my pat[ie]nt rights H[I]PPA by telling inmates about my prolaps[ed] rectum and laughing at me engaging in unprofessional conduct on the Centurion clock at Norton, KS clinic and Travel to EDCF where I'm at for better medical care Nurse Russell was working last weekend making rude comments to me and den[ie]d to unlock the bathroom door so I can urin[]ate because I have a medical issue there aware of. Also the documents in my medical chart relating to my care, diagnosis of [folliculitis] dis[]appeared Doctor McCartney and [dermatologist] diagnosed me with and I have been discriminated by Russel Nurse for Cent[u]rion stereotyped by other staff because I'm a sex offender. I'm Eyewitness.

*Id.* In the margin of this page, Plaintiff has written "Russel[l]. refusing treatment, Count 3. D[elibe]rate indifference." *Id.* As relief, Plaintiff seeks money damages. *Id.* at 5.

**IV. Screening Standards**

In each of the previous M&Os, the Court has set forth the standards by which it must screen prisoner complaints; those standards will not be repeated in full here. Plaintiff is assured, however, that the Court has liberally construed all of Plaintiff's submissions since Plaintiff is representing himself in this action. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court

accepts all well-pleaded allegations in the third amended complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

**V. Screening the Third Amended Complaint**

The third amended complaint does not cure the deficiencies that were previously identified by this Court. It does not contain a short and plain statement of Plaintiff's claims that gives fair notice to Defendants of the basis of the claims against them, as required by Rule 8. *See* March 20 M&O (Doc. 4, p. 3-4); March 25 M&O (Doc. 7, p. 2). Like the original complaint, it contains lists of legal terms and phrases that further confuse the reader. For example, in the portion of the form for Plaintiff to identify the statutes under which he invokes jurisdiction, Plaintiff has written:

> Bill rights Ch. 61 Artic[le] 5 Invocate impeachment contempt congress. Abusing States executive privileges of a body government by president, USA. executive functions oversite when reco is involved. F[I]SA Jurisdiction for special rules on torture and waterbo[a]rding Antiterrorism Act Geneva convention Switzle swiss special rapporter on Torture. International United Nations Congressional oversite Committe[e] RECO Act, Hobbs Act, Fed[e]ral, local health policy standards, canteen, items, Price, Fixing, monopoly.

(Doc. 21, p. 2 (all errors in original).) Even liberally construing the third amended complaint because of Plaintiff's pro se status, it does not comply with Rule 8. Thus, this Court is authorized to dismiss the complaint. *See Nasious* v. *Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 n.3 (10th Cir. 2007); *Chavez v. Huerfano County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (unpublished) (affirming dismissal without prejudice for violation of Rule 8 and stating that "[i]t is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case");

The third amended complaint also fails to comply with the joinder rules set out in Rules 18 and 20. *See* March 25 M&O (Doc. 7, p. 3-5); April 2 M&O (Doc. 11, p. 5-7). For example, Plaintiff brings a claim against Defendant Curry based on an alleged assault and battery in 2018 and also brings a claim against the State of Kansas based on alleged acts by the governor regarding

gambling and also based on alleged price fixing and illegal trade practices involving canteen items. (Doc. 21, p. 4.) Under Rules 18 and 20, which have been repeatedly identified for Plaintiff, this is improper. In the third amended complaint, Plaintiff states, "Joinder claims same construe liberally [*sic*]," (Doc. 21, p. 7), but even liberally construing the third amended complaint, it joins "different actions against different parties which present entirely different factual and legal issues," which is not allowed. *See* March 25 M&O (Doc. 7, p. 3); April 2 M&O (Doc. 11, p. 6).

The third amended complaint continues to assert a claim against Defendant Curry based upon a 2018 incident, despite the Court informing Plaintiff that the claim is barred by the relevant statute of limitations. *See* April 2 M&O (Doc. 11, p. 9-11); (Doc. 21, p. 1). Similarly, it names the State of Kansas and the KDOC as Defendants despite Plaintiff being previously informed that "the State and its agencies are not 'persons' that Congress made amenable to suit for damages under § 1983" and "the State of Kansas and its agencies are absolutely immune from suit under the Eleventh Amendment unless the State consents to being sued or Congress exercises its constitutional authority to eliminate the State's immunity," neither of which has happened with respect to Kansas. *See* April 2 M&O (Doc. 11, p. 8); (Doc. 21, p. 1). The third amended complaint also names Centurion as a Defendant but, as he did in the amended complaint, Plaintiff fails to allege the type of facts required to show corporate liability under § 1983. *See* April 2 M&O (Doc. 11, p. 12); (Doc. 21, p. 1).

Nurse Russell is named as a Defendant in the third amended complaint, but Plaintiff fails to allege sufficient specific facts to state a plausible claim for relief. Liberally construing the third amended complaint, it appears that Plaintiff seeks to bring a claim of deliberate indifference against Nurse Russell. (Doc. 21, p. 9.) An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference

to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components, one objective and one subjective. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).

The only factual allegations about Nurse Russell in the third amended complaint are that—on unidentified dates—she told a lie about Plaintiff, she retaliated against him and violated his rights under the Health Insurance Portability and Accountability Act (HIPAA) by laughing with other inmates about Plaintiff's prolapsed rectum, she was unprofessional, and she would not unlock a bathroom at Plaintiff's request. *Id.* at 8-9. Even when liberally construed and taken as true, these allegations are not sufficient to show a plausible claim that Nurse Russell was deliberately indifferent to Plaintiff's serious medical needs.

For all of these reasons, the Court finds that the third amended complaint is subject to dismissal in its entirety because it fails to comply with Federal Rules of Civil Procedure 8, 18, and 20; it seeks relief from the KDOC and the State of Kansas, which are immune from being sued under § 1983; and it fails to state a plausible claim for relief against any of the remaining named Defendants.

**VI. Motion to Amend the Third Amended Complaint (Doc. 27)**

Two weeks after he filed the third amended complaint, Plaintiff filed another complaint. (Doc. 27.) On the first page, in the portion of the form for explaining whether a defendant was acting under the color of state law at the time the claim arose, Plaintiff wrote: "Previously filed my final Amended 1983[.] Just Ask permission to proceed in Add Plaintiffs." *Id.* at 1. Thus, the Court liberally construed this submission as a motion to amend the third amended complaint. Plaintiff seeks permission to add two other inmates as Plaintiffs in this matter. *Id.* at 2.

Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiff is entitled to amend his pleading, or complaint, "once as a matter of course" and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)-(2). However, "'a district court may withhold leave to amend if the amendment would be futile.'" *See Johnson v. Metropolitan Property and Cas. Ins. Co.*, 97 F.4th 1223, 1232 (10th Cir. 2024). The Court therefore considered whether allowing the complaint filed at Doc. 27 to become the controlling complaint would cure the deficiencies in the third amended complaint.

The Court concludes that it will not, so allowing the amendment would be futile. First, neither of the two individuals Plaintiff seeks to add as plaintiffs has signed the filing that seeks to add them to this matter. (Doc. 27, p. 12.) Second, to the extent that Plaintiff intended to bring claims on behalf of the other two individuals, it is well established that a pro se individual may not represent others in court, even as a class representative. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000). Although Plaintiff may present his own claims in federal court without counsel, *see* 28 U.S.C. § 1654, he may not present the claims of others. *Fymbo*, 213 F.3d at 1321.

Third, Federal Rule of Civil Procedure 20(a)(1) controls who "may join in one action as plaintiffs." It allows multiple plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Plaintiff asserts that his proposed co-plaintiffs are also "directly [a]ffected by KDOC, State, [and] Cent[u]rion" and Plaintiff explains that "my peers learned about my case 1983 suit for better prison living conditions that are being Ignored D[elibe]rate Indifference." (Doc. 27, p. 2.) Even liberally construing the facts alleged in this filing, it does not support the plausible conclusion that joining the two additional plaintiffs would be appropriate under Rule 20(a)(1).

Fourth, even if the Court allowed the amendments, the complaint filed at Doc. 27 immediately would be subject to dismissal. Although the Court recognizes that pro se plaintiffs may find the requirements for putting together a proper complaint that states a plausible claim for relief "very confusing," (Doc. 27, p. 2), it is well established that pro se litigants must "follow the same rules of procedure that govern other litigants." See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel). The complaint at Doc. 27 fails to comply with Rule 8, Rule 18, or Rule 20; it again asserts a time-barred claim based on Defendant Curry's alleged battery of Plaintiff; and it fails to allege specific facts that support a plausible claim for relief under § 1983. Thus, the Court will deny the motion to amend as futile. *See Johnson*, 97 F.4th at 1232.

**VII. Motions (Doc. 22)**

On April 15, 2024, Plaintiff filed a five-page document that, liberally construed, seeks the appointment of counsel, discovery, hearing, an order directing a *Martinez* Report, a preliminary

injunction, and the appointment of a special master. (Doc. 22.) In the motion, Plaintiff also argues that his claim against Defendant Curry should not be barred by the statute of limitations. *Id.* On April 23, 2024, Plaintiff filed a 34-page document that, in part, repeated some of these requests . (Doc. 25.) Although large parts of these documents are difficult to understand[3], the Court will address the requests therein.

Plaintiff argues that his claim against Defendant Curry for the 2018 incident is not barred by the statute of limitations because he filed a § 1983 action in this Court as soon as he could in light of "the 2019-2020 covid lockdown" at the prison where he was incarcerated. *Id.* at 3. The Court has reviewed Plaintiff's previous § 1983 action, *Heide v. Satterfield, et al.*, Case No. 21-3111-SAC. The complaint filed in that case on April 26, 2021 did not name Mr. Curry as a defendant but it did allege that in "2018/2019," "Mr. Curry slammed [Plaintiff's] head more than (6) times while moving [Plaintiff] from one area to another," slammed Plaintiff to the floor in the clinic area, and beat Plaintiff. *Heide*, Case No. 21-3111-SAC, Doc. 1, p. 7. Plaintiff now argues that "this original filing complaint started less than 2 years afterwards." (Doc. 22, p. 3.)

First, Plaintiff's previous § 1983 action is a separate lawsuit from his current one and Plaintiff has not explained why the timing of the initial complaint in that matter affects the timeliness of claims brought in this case. Second, Plaintiff's assertions regarding the timing of filing his previous § 1983 do not align with this Court's records. Third, in the memorandum and

---

[3] For example, the first page of the April 15, 2024 submission states:

> [P]ro-se jay heide prays your honor for discovery in due time with Appointment of counsel in due tiem or Now. Your Honor the KB[I] and KDOC have been closed off on Anything in KDOC to hush a death of inmates, filing prevention from Plra to Arbitrary State Actors under color law operating with a li[c]ense to kill, execute, cover up, Fed[e]ral high crimes it's no wo[]nder this has been so cruel harsh conditions in prison on top of that it's all about them and greed power control of U.S. citizens w/o respects to cons[t]itution that were drafted into law after civil war succession union stole rights fought for.

(Doc. 22, p. 1 (all errors in original).)

order that dismissed *Heide v. Satterfield*, United States District Judge Sam A. Crow clearly explained: "To the extent Plaintiff alleges he was injured prior to April 2019, that claim would be barred by the two-year statute of limitations." *Heide*, Case No. 21-3111-SAC, Doc. 11, p. 3-4. That remains true and Plaintiff has not persuasively argued that it does not.

Turning to Plaintiff's request for counsel, the Court previously has denied a similar motion by Plaintiff in this matter, noting that there is no constitutional right to counsel in a civil case such as this and that Plaintiff bears the burden to convince the Court that there is sufficient merit to his claim or claims to justify appointing counsel. *See* March 20 M&O (Doc. 4, p. 5). The Court concluded that "it is not yet clear at this juncture that Plaintiff will assert a colorable claim against a named defendant." *Id.* Plaintiff explains that he seeks counsel in part to assist him in stating a claim for relief that complies with the relevant rules and requirements, which—as Plaintiff points out—can be challenging for a layman.[4] Nevertheless, as the Court has previously explained, the argument that having appointed counsel would "assist[ the prisoner] in presenting his strongest possible case" is not enough by itself to justify the appointment of counsel because "the same could be said in any case." March 20 M&O (Doc. 4, p. 5 (citations omitted)). The motion for appointment of counsel will be denied.

Because the third amended complaint will be dismissed in its entirety, Plaintiff's requests for discovery, a hearing, and the appointment of a special master will be denied. Plaintiff's request for a *Martinez* Report also will be denied. Plaintiff informs the Court that the only way he can "prove these events" are true is by the Court ordering a *Martinez* report, which Plaintiff describes

---

[4] Plaintiff's assertion that no pro se inmate complaint has ever passed the statutorily required screening (Doc. 22, p. 2) is inaccurate. *See, e.g.*, *Tahchawwichah v. Brennon*, 2024 WL 553999, *6 (D. Kan. Feb. 12, 2024) (unpublished memorandum and order) (stating, in a pro se action brought under § 1983 by a prisoner, that "Counts I and II state a plausible claim for relief and thus pass the initial screening required by 28 U.S.C. § 1915A(a) and (b) and 28 U.S.C. § 1915(e)(2)(B)").

as a "discovery tool." (Doc. 22, p. 2; *see also* Doc. 25, p. 2 .) The Tenth Circuit has made clear, however, that "[c]ourts order the *Martinez* report not to provide discovery, but to aid in screening the complaint." *Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016).

"The purpose of the Martinez report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v.* Estes, 829 F.2d 1005, 1007 (10th Cir. 1987). In other words, the Court may consider a *Martinez* report to aid it "in fleshing out possible legal bases of relief" when the Court screens a case under 28 U.S.C. § 1915A(b)(1)-(2). *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). The deficiencies in the third amended complaint leave the Court unable to determine the precise nature of some of Plaintiff's claims; other claims are brought against immune Defendants or are barred by the statute of limitations. The Court does not order *Martinez* reports in order to identify legal bases of relief not identified by a plaintiff.

Plaintiff's request for a preliminary injunction also will be denied. To justify a preliminary injunction, Plaintiff must establish that: (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). Plaintiff has not identified a plausible claim for relief against a Defendant or shown a substantial likelihood of success on the merits of a claim in this matter.

**VIII. Additional filings (Docs. 25, 28, 29, and 30)**

On April 23 and 30, 2024, Plaintiff submitted a total of 44 pages to the Court for filing in this matter. (Docs. 25 and 28.) On May 6, 2024, he submitted an additional 56 pages to the Court for filing. (Doc. 29.) On May 8, 2024, he submitted an additional 21 pages to the Court for filing. (Doc. 30.) The purpose of the documents is not always clear, but the Court has reviewed them

thoroughly. To the extent that Plaintiff asks the Court to add plaintiffs to this case, allow him to pursue claims that this Court has already identified as time-barred or otherwise not allowed in this action, allow him to represent a class of other inmate plaintiffs, appoint counsel, schedule an evidentiary hearing, or allow discovery, the requests are denied for the reasons previously stated.

Four of the pages are KDOC account withdrawal request forms with Plaintiff's name on them: one dated April 19, 2021; two dated June 7, 2021; and one dated July 23, 2021. (Doc. 25, p. 11; Doc. 28, p. 4; Doc. 29, p. 4-5.) An additional KDOC account withdrawal request is dated April 24, 2024, but it is for postage for a mailing to a state district court. (Doc. 30, p. 6.) Two pages are duplicate copies of a pay raise form from Norton Correctional Facility recording Plaintiff's pay raise of May 25, 2023. (Doc. 28, p. 11; Doc. 30, p. 20.) These documents have no obvious relevance to any claim Plaintiff has raised in this matter.

The submissions also include more than 50 pages of handwritten factual allegations and claims Plaintiff wishes to raise in this matter. (Doc. 25, p. 12-33; Doc. 28, p. 7-10; Doc. 29, p. 2-3, 6, 8-12, 17-36; Doc. 30, p. 7-12, 19.) There are 28 pages of health services request forms, many of which are largely illegible. (Doc. 25, p. 3- 10; Doc. 28, p. 5; Doc. 29, p. 39-56; Doc. 30, p. 13.) Nine of the pages are KDOC inmate request to staff member forms. (Doc. 25, p. 34; Doc. 28, p. 3, 6; Doc. 29, p. 7, 37-38; Doc. 30, p. 5, 14, 18.) Also included are inmate account statements, property loss claim forms, and other documents. Many of the pages are duplicative, meaning that Plaintiff has submitted certain documents multiple times. (*See*, *e.g.*, Doc. 21, p. 8; Doc. 25, p. 31; Doc. 28, p. 10.)

It appeals that Plaintiff seeks to add defendants, claims, or factual allegations through these supplemental filings. The Court has repeatedly advised Plaintiff that each complaint or amended complaint must include all defendants and claims he wishes to pursue in this matter. *See* March 20

M&O (Doc. 4, p. 4); March 25 M&O (Doc. 7, p. 2-3); April 2 M&O (Doc. 11, p. 14-15); April 4 M&O (Doc. 17, p. 3). In other words, it is not permissible to file freestanding statements of facts or assert additional claims in documents other than a complaint. Even liberally construing the documents and considering them alongside the controlling third amended complaint, however, the Court remains convinced this matter is subject to dismissal.

**IX. Conclusion**

The Court has conducted the statutorily required screening of the third amended complaint (Doc. 21) and concludes that even when it is liberally construed, the third amended complaint fails to comply with Rule 8, fails to comply with Rules 18 and 20, names Defendants that are immune from suit under § 1983, asserts a claim that is barred by the relevant statute of limitations, and fails to state a plausible claim for relief. Because these deficiencies also appeared in previous complaints filed in this matter and Plaintiff has not cured them thus far, the Court declines to offer Plaintiff further opportunities to amend the complaint. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'‘failure to cure deficiencies by amendments previously allowed'"').

The Court has also considered a complaint (Doc. 27) filed by Plaintiff after he filed his third amended complaint. Liberally construing this as a motion to amend the third amended complaint, the Court will deny the motion because the proposed complaint would immediately be subject to dismissal, rendering the amendment futile.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion to appoint counsel, for discovery, and for preliminary injunction (Doc. 22) is **denied**.

**IT IS FURTHER ORDERED** that the motion to amend complaint (Doc. 27) is **denied**.

**IT IS FURTHER ORDERED** that this matter is dismissed without prejudice for failure to state a plausible claim for relief.

**IT IS SO ORDERED**.

**Dated May 10, 2024, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**